Joseph HEINEMANN & Meribeth Heinemann *v.*
Elaine HALLUM

05–876                                      232 S.W.3d 420

Supreme Court of Arkansas
Opinion delivered March 16, 2006

*Lyons, Emerson, & Cone, PLC*, by: *Jim Lyons*, for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Tom D. Womack* and *Serena T. Green*, for appellee.

ROBERT L. BROWN, Justice. Appellants Joseph Heinemann and Meribeth Heinemann appeal from the circuit court's grant of summary judgment in favor of appellee Elaine Hallum. They assert that the circuit court erred in two respects: (1) in finding that Arkansas Code Annotated § 28-53-110(d) (Repl. 2004) served to bar their contribution action against Ms. Hallum; (2) in granting summary judgment because material questions of fact existed. We reverse the circuit court on the first point and remand the matter for further proceedings.

On June 18, 1999, Sadie Schoenfield died, leaving one-third of her residuary estate to Mr. Heinemann, one-third to Ms. Hallum, and one-third to the Temple Israel Cemetery Trust Fund.[1] Mr. Heinemann was appointed the personal representative of the estate, and all three beneficiaries received a partial distribution in the sum of $300,000 each.[2] On January 23, 2000, Mr. Heinemann, his wife, and Marguerite Culver, who were board members of the Temple Israel Cemetery Company, executed a disclaimer, which disclaimed the Cemetery's "remaining right, title, and interest as heir in the estate of [Ms. Schoenfield.]"

On December 12, 2003, several members of Temple Israel, Inc., beneficiaries of Temple Israel Cemetery Trust, and an owner of a plot in the Cemetery (hereinafter "the Levinson plaintiffs") filed a complaint against Mr. Heinemann, individually, and as trustee of Temple Israel Cemetery Trust, and as administrator of Ms. Schoenfield's estate; his wife, individually, and as trustee of the Temple Israel Cemetery Trust; Temple Israel Cemetery Company; Temple Israel Cemetery Association; and John Does 1-10. The Levinson complaint alleged that at some unknown point in time, Mr. Heinemann had been appointed trustee of the Temple Israel Cemetery Trust, and that despite repeated requests, Mr. Heinemann had refused to provide information about his actions as trustee. It further stated that during the administration of the

[1] Throughout the pleadings in this matter, the cemetery is referred to as the Temple Israel Cemetery Trust Fund, the Temple Israel Cemetery Company, and the Temple Israel Cemetery Association. When discussing the pleadings, we have maintained the title used by the parties. However, in our analysis, we simply use the term "Cemetery."

[2] In the order authorizing final distribution of the estate assets, the probate court noted that the distributees of the residuary estate received partial distributions of $300,000 each. We note, however, that in the order authorizing partial distribution, the probate court authorized Mr. Heinemann to distribute to the three beneficiaries the sum of $200,000 each.

Schoenfield estate, Mr. Heinemann "engaged in improper acts which increased the benefits he received personally under the will to the exclusion of the other residual beneficiaries, including the trust of which he served as trustee." The complaint continued that "[a]cting as trustee, Mr. Heinemann improperly disclaimed the trust's interest in the will and thereby increased his personal benefit[.]" The complaint asserted several causes of action: (1) breach of fiduciary duty; (2) fraud, deceit, and conversion; (3) improper and fraudulent administration of the estate; (4) civil conspiracy. The Levinson plaintiffs further requested an accounting and the imposition of a constructive trust, removal of the trustees, and punitive damages.

As a result of the Levinson complaint filed against Mr. Heinemann and his wife, the Heinemanns filed a complaint against Ms. Hallum on June 4, 2004, (Hallum complaint), which is the basis for this appeal. In their complaint, the Heinemanns alleged that following the disclaimer of the Temple Israel Cemetery Company's rights in the estate, an order authorizing the final distribution of the estate's assets was filed on December 18, 2000, which distributed the remainder of the residuary estate equally between Mr. Heinemann and Ms. Hallum. The Heinemanns stated that two cases had been filed against them, and, in those cases, it was claimed that the Heinemanns had benefitted as a result of their disclaimer of the Temple Israel Cemetery Company's rights to the residuary estate.

The Heinemanns asserted in their complaint that damages were being sought against them for the full amount claimed to be due to the Temple Israel Cemetery Trust, "despite the fact that Defendant Elaine Hallum received property from the Estate equal to the amount received by Plaintiff Joseph Heinemann." The Heinemanns continued that at all times pertinent to the matter, Ms. Hallum knew, or should have known, that she was receiving a greater amount of the estate as a result of the disclaimer, and that the amount received was equal to the amount Mr. Heinemann received. The Heinemanns alleged that Ms. Hallum "knowingly consented to the receipt of the increased amount of the Estate" and that in the event that damages were awarded against the Heinemanns, they were entitled to indemnification or contribution from Ms. Hallum. They further asserted that if damages were awarded against them in those cases, Ms. Hallum would be unjustly enriched because she received more than that to which she was entitled.

An order of consolidation was entered by the circuit court consolidating the Levinson suit and the Hallum suit. Ms. Hallum then filed a motion for summary judgment in the latter case. She alleged that the Hallum suit arose out of the distribution made to her from the Schoenfield estate by Mr. Heinemann, the executor of the estate. Based on this, she contended that pursuant to Ark. Code Ann. § 28-53-110(d) (Repl. 2004), legal actions against a beneficiary to recover property improperly distributed must be filed within the time constraints of the statute. She asserted that this was not done, and that because the Heinemanns' complaint to recover property allegedly distributed improperly was not timely filed, the action was barred by the statute of limitations.

The Heinemanns then moved for summary judgment against the Levinson plaintiffs, and a hearing was held on the summary-judgment motions in both cases. On April 28, 2005, the circuit court granted Ms. Hallum's motion for summary judgment, based on the expiration of the statute of limitations under § 28-53-110(d). On July 19, 2005, the circuit court dismissed the lawsuit filed by the Levinson plaintiffs with prejudice, because the parties had settled the case. The Heinemanns now appeal the grant of summary judgment in favor of Ms. Hallum.

The Heinemanns first contend that the circuit court erred in granting summary judgment to Ms. Hallum based on § 28-53-110(d), when their suit against her consisted of a claim for contribution against a joint tortfeasor under Arkansas' Uniform Contribution Among Tortfeasors Act. They assert that a claim for contribution does not accrue, and the statute of limitations does not begin to run, until payment is made by one tortfeasor which is more than that tortfeasor's pro rata share. The Heinemanns submit that following the hearings on the motions for summary judgment, they settled with the Levinson plaintiffs for $250,000, which was more than the Heinemanns' pro rata share of the damages involved in the Levinson lawsuit. Accordingly, they maintain that they are entitled to contribution from Ms. Hallum and that the circuit court erred in granting her summary judgment.

This court reviews the grant of summary judgment using the following standard of review:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Chavers*, 349 Ark. 550, 79 S.W.3d 361; *Fryar v. Roberts*, 346 Ark.

432, 57 S.W.3d 727 (2001). Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878, *cert. denied*, 537 U.S. 1003 (2002). This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.* After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Id.*

*Gonzales v. City of DeWitt*, 357 Ark. 10, 14-15, 159 S.W.3d 298, 301 (2004).

### a. *Arkansas Code Annotated § 28-53-110(d)*

At issue in the instant case is whether the circuit court erred in finding that § 28-53-110(d) bars the Heinemanns' suit against Ms. Hallum. That statute provides, in pertinent part:

> (d) Any suit or proceeding to recover property improperly distributed or the value thereof, money improperly paid, and income or interest, as the case may be, shall be barred three (3) years after the decedent's death or two (2) years after the time of distribution or payment, whichever last occurs.

Ark. Code Ann. § 28-53-110(d) (Repl. 2004).

The Heinemanns claim that rather than a suit to recover property improperly distributed, their claim against Ms. Hallum is one for contribution under the Uniform Contribution Among Tortfeasors Act (UCATA), codified at Ark. Code Ann. §§ 16-61-201 through 16-61-212 (Repl. 2005). Under the UCATA, the right of contribution among joint tortfeasors is expressly provided. *See* Ark. Code Ann. § 16-61-202(1) (Repl. 2005).

We agree with the Heinemanns' description of their complaint. Their complaint clearly seeks contribution for the amounts claimed solely against them by the Cemetery trustees in the Levinson matter. Despite the fact that the Heinemanns'

ultimate liability in the Levinson case may have resulted from an improper distribution of the Schoenfield estate, the Heinemanns' claim against Ms. Hallum does not allege, nor consist of, a claim for improper distribution from the Schoenfield estate. Instead, it is an attempt to recover monies paid out, or to be paid out, by them as a result of the Levinson lawsuit, which stemmed from claims such as breach of fiduciary duty, fraud, fraudulent administration of an estate, and civil conspiracy.[3] As such, § 28-53-110(d) is simply not applicable. We hold that the circuit court erred in granting summary judgment based on § 28-53-110(d).

### b. Three-year statute of limitations

Ms. Hallum, however, presents two alternative reasons to affirm. The first is that the three-year general statute of limitations under Ark. Code Ann. § 16-56-105, which the Heinemanns claim is applicable to contribution actions, began to run as of the date the Heinemanns' disclaimed the Cemetery's interest in the residuary estate.[4] That date, using either the execution date of January 23, 2000, or the filed date of December 15, 2000, would make the Heinemanns' suit that was filed more than three years later on June 4, 2004, untimely.

The UCATA in the Arkansas Code provides that "[a] joint tortfeasor is not entitled to a money judgment for contribution until he or she has by payment discharged the common liability or has paid more than his or her pro rata share thereof." Ark. Code Ann. § 16-61-202(2) (Repl. 2005). The act further permits a defendant claiming contribution to seek leave as a third-party plaintiff to bring someone into the original action who may be a

---

[3] It is unclear from the record whether the Heinemanns have already paid the settlement amount to the Levinson plaintiffs.

[4] While the briefs-in-support of summary judgment in the Hallum matter do not appear to be included in the Addendum or the Supplemental Addendum, a review of Ms. Hallum's brief-in-support of her motion included in the record reveals that she did not make the arguments originally. She appears to have solely relied on the argument that § 28-53-110(d) barred the Heinemanns' claim against her.

However, in her brief-in-support of her reply to the Heinemanns' response to her motion for summary judgment, Ms. Hallum argued that (1) § 28-53-110(d) barred the action; (2) regardless of § 28-53-110(d), the general statute of limitations barred the claims; and (3) aside from the statute of limitations, the Heinemanns' claim for indemnity fails because the relief sought is inconsistent with the right of indemnity.

joint tortfeasor. *See* Ark. Code Ann. § 16-61-207 (Repl. 2005). Thus, while a cause of action for contribution may be brought *prior* to any judgment based on the underlying tort, the question presented at this point is: at what point does the contribution cause of action accrue and the statute of limitations begin to run?

In *Pennington v. Karcher,* 171 Ark. 828, 286 S.W. 969 (1926), this court, citing to *Cooper v. Rush,* 138 Ark. 602, 212 S.W. 94 (1919), held that the right of action for contribution accrues when one surety pays more than his share of the common liability, which is in accordance with the general rule that a party acquires the right of contribution as soon as he pays more than his share, but not until then. This court further observed that, as a consequence, the statute of limitations does not begin to run until that time. The *Pennington* case was decided prior to the General Assembly's passage of the UCATA in 1941. Nevertheless, the *Pennington* case was cited and relied on by this court in a subsequent case, *Trinity Universal Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 246 Ark. 1021, 441 S.W.2d 95 (1969), which was decided well after the adoption of the UCATA in 1941.

The conclusion of this court in *Pennington* is further bolstered by courts in foreign jurisdictions as well as by the *American Law Reports. See, e.g., Aetna Cas. & Surety Co. v. Aztec Plumbing Corp.,* 106 Nev. 474, 476, 796 P.2d 227, 229 (1990) ("A cause of action for indemnity or contribution accrues when payment has been made."); *Nikolous v. Superior Court,* 157 Ariz. 256, 257, 756 P.2d 925, 926 (1988) ("[T]he cause of action for contribution does not actually accrue until one of several joint tortfeasors pays more than its prorata share of the common liability."); *Sziber v. Stout,* 419 Mich. 514, 533-34, 358 N.W.2d 330, 338 (1984) ("[I]t is indisputable that the statute of limitations governing a contribution action begins to run when the cause of action for contribution accrues, and that the action accrues when a judgment has been taken or rendered and the third-party plaintiff has paid more than his aliquot share."); *Calder v. City of Crystal,* 318 N.W.2d 838, 841 (Minn. 1982) ("A claim for contribution does not accrue or mature until the person entitled to the contribution has sustained damage by paying more than his fair share of the joint obligation."); *People v. Superior Court of Los Angeles County,* 26 Cal. 3d 744, 757, 608 P.2d 673, 682, 163 Cal. Rptr. 585, 594 (1980) ("[T]he authorities hold that a tort defendant's action for contribution accrues for statute of limitations purposes when he has paid out more than his share of the damages, and not when the

plaintiff's tort injury occurs."); *Roehrig v. City of Louisville*, 454 S.W.2d 703, 704 (Ky. Ct. App. 1970) ("[T]he law is well settled that limitations against a claim for contribution on a tort liability start running not from the time of the commission of the tort, but from the time of the right of action for contribution accrues (ordinarily by payment).").

This conclusion is best summarized by Maurice T. Brunner in his *American Law Reports* annotation, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, § 3[a] (2005):

> The rule generally recognized is that a claim for contribution based on tort, where such claim is authorized, does not accrue, and the statute of limitations does not start to run thereon, at the time of the commission of the tort, or of the resulting injury or damage, but from the time of the accrual of the cause of action for contribution, which is at the time of payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereof, or at the time of other satisfaction or discharge of such claim in whole or in part, to an extent greater than his pro rata share of the common liability, by the party seeking contribution.

> The reason for the rule, it has been said, is that otherwise the injured party could foreclose a tortfeasor's right to contribution by waiting to bring his action until just before the statute of limitations ran on his claim. [Footnotes omitted.]

Ms. Hallum, however, points to a decision by the Eighth Circuit Court of Appeals, interpreting Arkansas law, which appears to hold that the cause of action for contribution begins to run with the commission of the underlying tort. *See Union Pac. R.R. Co. v. Mullen*, 966 F.2d 348 (8th Cir. 1992). In that case, the Eighth Circuit appeared to rely on the Commissioner's Notes to the UCATA, which it said the Arkansas Supreme Court had held was "very persuasive and should be adopted," unless it was clearly convinced that an erroneous interpretation has been given the Act by the Commissioners. 966 F.2d at 350 (quoting *Scultz v. Young*, 205 Ark. 533, 538, 169 S.W.2d 648, 651 (1943)). The Eighth Circuit then read the Commissioner's Notes to say that a cause of action for contribution arises at the time of the commission of the underlying tort.

We disagree with the Eighth Circuit's decision in *Union Pac. R.R. Co. v. Mullen, supra*, and agree with the majority view as expressed in this opinion and as best illustrated by the

*American Law Reports* quotation that a cause of action for contribution accrues when one joint tortfeasor pays more than his or her pro rata share of common liability. The *Mullen* case, of course, is not binding authority on this court. That being the case, the Heinemanns' claim for contribution against Ms. Hallum is not barred, assuming the three-year statute of limitations applies, because the contribution action accrued when they paid, or will accrue when they pay, more than their pro rata share of the settlement amount to the Levinson plaintiffs.

### c. Whether Ms. Hallum is a Joint Tortfeasor

Ms. Hallum also urges an affirmance of the circuit court's order based on her claim that she is not a joint tortfeasor. That argument appears only to have been addressed in the hearing on the motions for summary judgment. The relevant colloquy follows:

> CIRCUIT COURT: My question is, is your client even a joint tortfeasor or she's just a beneficiary that received an overpayment.

> MS. HALLUM'S COUNSEL: That's what my point is.

> CIRCUIT COURT: And another thing is, why couldn't the limitations run as to your client and not in the original lawsuit?

> MS. HALLUM'S COUNSEL: My response to that is — and I'm sure this is something that counsel for the plaintiffs' original lawsuit would say — is that much of their claim is predicated on the position that Mr. Heinemann breached certain fiduciary duties that he had to the various individuals including their plaintiffs. And of course that is no where to be found in the Hallum case because my client has no fiduciary duties to anyone. She was just a recipient of this distribution....

> . . . .

> MS. HALLUM'S COUNSEL: Anyway, Your Honor, my reply to [the Heinemanns' counsel's] remarks is simply that the statute does govern. My client was not a tortfeasor. She's just a lady there that accepted payment from the executor of an estate....

Because the joint tortfeasor argument was raised orally to the circuit court, we will address it.

As an initial matter, Ms. Hallum cites no authority in support of her tortfeasor argument. But in addition, the Arkansas Code defines "joint tortfeasors," for purposes of the UCATA, as "two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Ark. Code Ann. § 16-61-201 (Repl. 2005). In the case before us, the Cemetery certainly suffered an injury when the disclaimer was executed by the Heinemanns. While Ms. Hallum did not have a fiduciary duty in the sense that Mr. Heinemann was a trustee of the Cemetery and she was not, the Cemetery and the other plaintiffs also asserted civil conspiracy in its complaint against the Heinemanns.

This court has held that a civil conspiracy is defined as a combination of two or more persons to accomplish a purpose that is unlawful, or oppressive, or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, but by unlawful, oppressive, or immoral means. *See, e.g., Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 69 S.W.3d 393 (2002); *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996). Mr. Heinemann stated in his affidavit in opposition to Ms. Hallum's summary-judgment motions that Ms. Hallum and he discussed the disclaimer and that she encouraged its execution. That could form the basis of a civil-conspiracy claim which would then make Ms. Hallum a joint tortfeasor. We decline to affirm the summary-judgment order for this alternative reason.

Because we reverse and remand on the first point raised, it is unnecessary for us to address the Heinemanns' second point.

Reversed and remanded.