BENTON COUNTY, Arkansas *v.*
OVERLAND DEVELOPMENT COMPANY, INC.

07-613                                              268 S.W.3d 885

Supreme Court of Arkansas
Opinion delivered November 29, 2007

*Davis, Wright, Clark, Butt and Carithers, PLC,* by: *William Jackson Butt, II,* and *Tisha M. Harrison,* for appellant.

*Penix and Taylor,* by: *James A. Penix, Jr.; Stephen L. Wood,* for appellee.

ROBERT L. BROWN, Justice. Appellant Benton County, Arkansas appeals the grant of summary judgment in favor of appellee Overland Development Company, Inc. ("Overland"),

and the circuit court's ruling that there was no rational basis to deny Overland's permit application to operate a red-dirt mine. We reverse and remand.

Overland has a leasehold interest in certain land in Benton County which is in close proximity to the Cross Hollows cantonment. By all accounts, Cross Hollows is an important Civil War archeological site. On January 27, 2006, Overland submitted an application to the Benton County Planning Board, in which it requested permission to operate a red-dirt mine on the land. As part of the application process, Overland had an archeological study of the proposed mining site performed by Randall Guendling, an archeologist with Arkansas Archeological Survey. That study resulted in a report ("Guendling Report"), which was furnished to Overland. The Guendling Report found that the proposed mining site had not been occupied during the Civil War but had been used for prehistoric hunting and gathering, late 19th or early 20th century logging, and 20th century hunting. The Guendling Report concluded that red-dirt mining in the area would have no impact on significant archeological material unless it was conducted in one area of the proposed site that was identified as having an old logging cabin ("Locus I"). Nonetheless, on August 16, 2006, the Benton County Planning Board denied Overland's permit application on the basis that the mining operation was not consistent and compatible with existing development and the environment.

Overland appealed this decision to the Benton County Appeal Review Board, which affirmed the Planning Board's decision on October 12, 2006. On November 13, 2006, Overland appealed the Review Board's decision to a Benton County Circuit Court as allowed by Arkansas Code Annotated § 14-17-211 (Repl. 1998), which provides for de novo review by the circuit court.

On March 30, 2007, Overland moved for summary judgment and contended that: (1) Overland had complied with all state environmental regulations which, it argued, preempted any Benton County environmental regulations; (2) the proposed dirt mine was located in an area with several other dirt mines and therefore constituted "clustering" and was per se compatible with existing land use under Benton County regulations; (3) the Guendling Report demonstrated that no significant archeological materials would be disturbed by the mining; and (4) Benton County had failed to produce evidence that would demonstrate that red-dirt

mining was not compatible with the preservation of historical and archeological pursuits. Appended to the motion for summary judgment were, among other things, the Guendling Report and the affidavit of David E. Covington ("Covington Affidavit"), the owner of the proposed mining site and the president of Overland, who averred that a dirt-mining operation on the site would decrease traffic on historic roads.

Benton County filed a reply to the motion for summary judgment, in which it asserted that: (1) the proposed mining operation had the potential to impact the existing environment significantly and (2) the fact that other mining operations existed in the same area did not make Overland's operation per se compatible. One of the exhibits appended to Benton County's brief was the affidavit of Jerry Hilliard ("Hilliard Affidavit"), an archeologist also employed by the Arkansas Archeological Survey, who has conducted multiple archeological surveys in the Cross Hollows area. In the Hilliard Affidavit, Hilliard averred that it was his opinion "that the mine itself, the access roads, and the additional heavy equipment traffic that would necessarily occur as a result of this particular red-dirt mine would adversely impact the cultural, historical and archeological landscape of the Cross Hollow site."[1] Also included among the exhibits were excerpts from the deposition of Michael Evans, an archeological assistant with the Arkansas Archeological Survey ("Evans Deposition"), which discussed the historical significance of the Cross Hollows site as a Civil War camp and as part of the Trail of Tears and suggested that the Guendling Report had not adequately investigated potential prehistoric deposits at the proposed mining site.

A hearing was held on the summary-judgment motion, after which the circuit court granted Overland's motion. This ruling was memorialized in a May 18 judgment, which concluded that there was no genuine issue of material fact before the court and that there was no rational basis to deny Overland's permit application. It is from this judgment that Benton County appeals.

Benton County first points out that it is undisputed that Cross Hollows is the most significant non-battlefield Civil War site in Arkansas. The county argues that the conflicting opinions of Hilliard and Guendling, who are both archeologists employed by

---

[1] While the Guendling Report and the parties refer to the area as Cross Hollows, the Hilliard Affidavit refers to it as Cross Hollow.

the Arkansas Archeological Survey, demonstrate that there is a genuine issue of material fact as to whether the proposed mining operation will have an impact on significant archeological artifacts at Cross Hollows. The statements in the Hilliard Affidavit, it is contended, are buttressed by Hilliard's considerable expertise regarding the Cross Hollows area. In fact, Benton County points out, Hilliard's surveys of the area are cited as a major source in the Guendling Report.

Benton County also emphasizes the Evans Deposition's discussion of the potential impact of the proposed red-dirt mine. It argues that the Evans Deposition does not contain mere assertions but rather conclusions based on historical information. To the extent that Evans lacks academic credentials, Benton County argues that this goes only to the weight that should be given to his testimony, which is not an issue to be considered during summary judgment. Benton County further underscores the fact that, although traffic on some historic roads may be decreased by the operation of a mine at the proposed site, the ingress/egress location for the new mine would be at the intersection of Old Wire Road and Cross Hollows Road, which is the very "Cross Hollows" that is the most significant non-battlefield Civil War site in Arkansas.

Benton County notes, finally, that, despite the fact that the Guendling Report contains the broad conclusion that mining on the site will not disturb any significant archeological material, the report also observes that a new archeological site that may contain some important deposits was uncovered during the survey of the proposed mine site. While Overland may assert that it will not mine in that part of the permit area, Benton County contends that there is nothing to prevent it from doing so if it chooses.

Overland, on the other hand, claims that Benton County has failed to provide evidence to rebut the findings of the Guendling Report. Despite performing a thorough sweep of the area, Overland argues, Guendling's team failed to uncover any Civil War artifacts at the site. The company concedes that the Guendling Report uncovered one site, Locus I, that might contain important non-Civil War artifacts but argues that Overland has agreed not to disturb that site. Overland then points to the Covington Affidavit, which avers that the proposed mine will lead to decreased traffic on local historic roads.

Overland concludes by stating that the Hilliard Affidavit contains only speculation and opinion and is, therefore, insufficient to rebut, point for point, the information contained in the

Guendling Report and Covington Affidavit. Overland discounts the information contained in the Evans Deposition, noting that Evans gave only opinions, not facts, and has little academic background in archeology.

The standard of review used by this court in reviewing the grant of summary judgment is well established:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts.

*Heinemann v. Hallum* 365 Ark. 600, 603-04, 232 S.W.3d 420, 422-23 (2006) (citations omitted) (quoting *Gonzales v. City of DeWitt*, 357 Ark. 10, 14-15, 159 S.W.3d 298, 301 (2004)). Speaking in the context of employment discrimination cases, this court has noted that an affidavit must contain "[m]ore than mere assertions or possibilities . . . to defeat a motion for summary judgment." *Mack v. Sutter*, 366 Ark. 1, 6, 233 S.W.3d 140, 145 (2006).

In the instant case, Overland supports its summary-judgment motion with the Guendling Report, which includes a detailed archeological survey of the proposed red-dirt mine site. The report concludes that the results of the survey were not consistent with any Civil War occupation of the site. The survey, however, did find evidence of prehistoric use of the land, and the report alludes to that fact. As to any Civil War or prehistoric artifacts, the report concludes that "[d]irt mine operation will not impact significant archeological material as survey and collection of the artifacts for curation have removed most of them." Through

the Guendling Report, Overland has made a prima facie case that no significant Civil War or prehistoric artifacts *located at the site itself* will be disturbed by red-dirt mining. Benton County, however, has not provided its own survey of the mining site and, therefore, has not "met proof with proof" to demonstrate the existence of a material issue of fact on these precise points. *Heinemann*, 365 Ark. at 604, 232 S.W.3d at 423.

█ Nevertheless, Overland has failed to make a prima facie case that it is entitled to summary judgment regarding two issues: (1) whether the mining operation will disturb significant artifacts from a late 19th or turn-of-the-20th century logging endeavor located at Locus I and (2) whether the transportation of red dirt from the mining site will have any significant impact on Civil War sites located outside of the mining area surveyed for the Guendling Report, particularly in the Cross Hollows area. On the first issue, the Guendling Report, which Overland itself introduced as proof that there was no genuine issue of material fact, stated that the remains of a small cabin at Locus I, which appeared to have been associated with logging in the late 19th or early 20th century, had been found on the site and that the area surrounding the cabin "may contain some important deposits." Although the report goes on to say that impact to this area "can easily be avoided by mining if it is confined to the west end of the ridge," Overland does not even suggest that a permit granted by Benton County would confine mining operations at the red-mine site to the west end of the ridge. Because of the admission of the historic cabin at Locus I and potential for important "deposits" made in the Guendling Report, Overland has failed to establish that there is no genuine issue of material fact as to mining in the permit area.

█ The second issue has to do with the off-site impact of mining operations on Civil War artifacts in the Cross Hollows area. The Guendling Report focuses on the mining area itself and does not purport to address off-site impacts; nor is it clear that Guendling examined the potential impact of building roads across the Covington property to remove the mined dirt. Although the Covington Affidavit addresses off-site impacts in asserting that traffic on local historic roads will decrease due to the operation of the proposed mine, this assertion, even if accepted as true, does not compel the conclusion that no off-site impacts will result from the proposed mine. The Hilliard Affidavit offered by Benton County, on the other hand, states that the access roads and heavy equipment

traffic that would occur as a result of the mining operations would have an adverse impact on the "cultural, historical and archeological landscape of the Cross Hollow[s] site." Hilliard's acknowledged expertise and extensive surveys of the Cross Hollows site are undisputed and give his conclusions more weight than "mere assertions." *Mack*, 366 Ark. at 6, 233 S.W.3d at 140. The affidavit of an expert, introduced in response to a motion for summary judgment, has been held by this court to demonstrate the existence of a material question of fact. *Four County (NW) Reg'l Mgmt. Dist. Bd. v. Sunray Servs., Inc.*, 334 Ark. 118, 132-33, 971 S.W.2d 255, 263 (1998). The Hilliard Affidavit does precisely that.

We conclude that a genuine issue of material fact does exist regarding whether there would be a significant archeological impact on the Cross Hollows area from the red-dirt mining proposed by Overland.

With regard to the second issue of whether Benton County had a "rational basis" for denying Overland's permit, it is unclear to this court what the circuit court meant by the use of this term in its judgment. The circuit court never expressly found that Benton County's treatment of Overland violated the company's equal protection rights, which would then lead to a rational-basis analysis. *See, e.g., Johnson v. Sunray Servs., Inc.*, 306 Ark. 497, 508, 816 S.W.2d 582, 588 (1991). Though Benton County argues in its brief that there was a legitimate government interest, or rational basis, to treat Overland's red-dirt mine differently from other mines in the area, we decline to address this constitutional issue, because of our uncertainty about whether it was fully developed before the circuit court or ruled upon. *See Knowlton v. Ward*, 318 Ark. 867, 878-79, 889 S.W.2d 721, 728 (1994).

Reversed and remanded.