2009 Ark. App. 286

**SOUTHERN DEVELOPMENT CORPORATION,**
Appellant,

v.

**FREIGHTLINER OF NEW HAMPSHIRE, INC.,**
Appellee.

**No. CA 08–595.**

Court of Appeals of Arkansas.

April 15, 2009.

Brown & McKissic, LLP, by: Gene E. McKissic, Pine Bluff, for appellant.

Huckabay, Munson, Rowlett & Moore, P.A., by: Sarah Greenwood, Little Rock, for appellee.

D.P. MARSHALL JR., Judge.

This is a case about an allegedly faithless notary. Originally a multi-party dispute, the case has boiled down to two parties—Freightliner of New Hampshire, Inc. and Southern Development Corporation. The circuit court granted Freightliner summary judgment and ordered Southern to pay Freightliner $45,000.00. Southern appeals. It argues three points: that the judgment is void *ab initio;* that a genuine issue of material fact exists; and that the damage award exceeds the amount of its contractual liability.

*The Facts.* The foundational transaction and the resulting litigation involved many parties and claims. American Cedar, Inc. bought several tractors and trailers from Freightliner. Under the sales contracts, Freightliner was due monthly payments and retained a security interest in the equipment. The documents reflect that Julian McKinney, American's President, signed a continuing guaranty for each contract, back stopping all of American's obligations to Freightliner. The documents also include six powers of attorney, one for each tractor or trailer, purportedly bearing McKinney's signature. Sylvia Speer notarized McKinney's signature on each power. Speer was a former American employee. Southern, a registered notary-bonding company, was Speer's surety.

Freightliner eventually assigned all of its interests in the contracts to Citicapital Corporation. American defaulted. Citicapital accelerated the balance due and demanded full payment from both American and McKinney. Citicapital then repossessed the tractors and trailers, sold them, and sued American and McKinney for the deficiency. McKinney responded that he had never signed any documents relating to these contracts, and that those papers containing his signature were forgeries. Citicapital then amended its complaint, adding Speer and Southern. Citicapital also sought indemnity from Freightliner. Freightliner counterclaimed against Citicapital and cross-claimed against all of the

defendants. Later, General Electric Capital Corp. somehow acquired the account from Citicapital, and stepped into its shoes in this case.

After mediation, Freightliner and General Electric Capital Corp. settled all their claims against each other. The court then granted Freightliner's motion for summary judgment against Southern.

*Our Jurisdiction.* The multiplicity of parties and claims raises a jurisdictional question. Ark. R. Civ. P. 54(b). The parties do not address this issue, but we must. If the summary-judgment order is not final, then we must dismiss this appeal for lack of jurisdiction. *Erwin v. Riverside Furniture Corp.,* 97 Ark.App. 42, 44–45, 244 S.W.3d 14, 16 (2006).

■ First, Sylvia Speer. The notary was never served. Under older cases, the presence of a named-but-unserved party destroyed a judgment's finality. *E.g., McKinney v. Bishop,* 369 Ark. 191, 194, 252 S.W.3d 123, 125 (2007). But new Ark. R. Civ. P. 54(b)(5) applies and cures this jurisdictional problem. All the claims against Speer were dismissed with prejudice by the summary-judgment order. *Jackson v. Sparks Regional Medical Center,* 375 Ark. 533, 537–39, 294 S.W.3d 1, 3–5 (2009). Second, the many claims. General Electric Capital and Freightliner settled. As part of their agreement, Freightliner received all of General Electric Capital's interest in the original contracts and its present and future causes of action by assignment. These two parties also dismissed their claims against American and McKinney. And General Electric Capital dismissed its claims against Southern. The order disposing of all these parties and claims is not in Southern's addendum. But we may go to the record to establish jurisdiction. *Russell v. State,* 85 Ark.App. 468, 470, 157 S.W.3d 561, 563 (2004). Because all of the parties have

either been dismissed from the lawsuit, or had their rights resolved by the settlement, we have a final order supporting our jurisdiction. *Erwin,* 97 Ark.App. at 44–45, 244 S.W.3d at 16.

■ *The Judgment.* As its first point on appeal, Southern emphasizes that its liability as a surety is purely derivative. It argues that, because Sylvia Speer was never served and the circuit court never acquired jurisdiction over her, the judgment against Southern—Speer's surety— is void *ab initio.*

There is a preliminary point here. The premise of Southern's argument is that a private right of action exists on this bond, although the bond was given "unto the State of Arkansas" as the statute requires. Ark.Code Ann. § 21–14–101(d)(1) (Supp. 2007). The circuit court and Freightliner accept this premise, which has been present in our law for more than a century. Notaries Public, Mansfield's Digest § 4764, at 940; *Smith v. Maginnis,* 75 Ark. 472, 476–78, 89 S.W. 91, 92–93 (1905) (implying that the statutory surety may, in a proper case, be liable for damages proximately caused by the negligent conduct of the notary committed in the performance of his official duties). It appears to be the general rule. John D. Perovich, Annotation, *Liability of Notary Public or His Bond for Negligence in Performance of Duties,* 44 A.L.R.3d 555 § 3 (1972). The theory, which no one disputes in this case, is that the State required this bond for the benefit of any person or entity touched by the notary's work, and thus Freightliner may sue on it.

■ Now to Southern's argument that its liability for Speer's conduct required the circuit court to first acquire jurisdiction over the notary. We disagree. Good service of process is necessary to give the trial court personal jurisdiction over a de-

fendant. Ark. R. Civ. P. 4; *Raymond v. Raymond*, 343 Ark. 480, 484, 36 S.W.3d 733, 735 (2001). Southern was properly served, and the circuit court thus acquired jurisdiction over it—the entity that had agreed to stand good if Speer failed to discharge her duties faithfully.

Here, Freightliner has two claims arising from the notary's alleged conduct: one against Speer (the principal obligor) based on her acts and omissions, and another against Southern (the secondary obligor) based on the bond. "It would diminish the attractiveness and utility of the secondary obligation if the obligee in all cases were obliged first to enforce its right against the principal obligor." RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 50, cmt. a. Unless the parties agree otherwise, the obligee "may choose whether to seek enforcement first of the underlying obligation or the secondary obligation." *Ibid.* There was no such obligee-first agreement in this bond. Therefore the judgment is not void *ab initio* based on Speer's absence from the case.

■ *The Fact Issue.* Our law imposes this duty upon notaries: it is unlawful for a notary public to witness any signature on any instrument unless he or she either (1) witnesses the signing of the instrument and knows the signer or the signer presents proof of her identity, or (2) recognizes the signature of the signer by virtue of familiarity with the signature. Ark.Code Ann. § 21–14–111 (Repl.2004). By granting summary judgment, the circuit court found no issues of material fact and held that Speer violated her legal duty by notarizing the forged powers of attorney. *Benton County v. Overland Development Co.*, 371 Ark. 559, 564, 268 S.W.3d 885, 888–89 (2007). This conclusion was reversible error on this record.

The parties agree that Speer did not witness McKinney sign the powers of attorney. Speer never testified. And the record does not demonstrate whether she recognized the signatures as McKinney's. The facts here point both ways.

The court found that the undisputed proof presented by Freightliner was that "Speer did not question the authenticity of the forged signatures, did not work for Mr. McKinney, or American Cedar, at the time the signatures were notarized, had not worked closely with Mr. McKinney, had not previously notarized documents for Mr. McKinney, and her only source of familiarity with Mr. McKinney's signature would most likely be her paycheck." The court also faulted Speer for notarizing the documents without calling McKinney or taking any action reasonably calculated to insure the signatures' authenticity.

McKinney testified on deposition, however, that the forged signatures on the powers were reasonably similar to his own. When asked if Speer had seen his signature enough in the course of her employment with American that she would recognize it, he said "yes." When asked whether he had any reason to believe that Speer would notarize any document without believing the signature to be authentic, McKinney answered "no." Patty Cogburn—who appears to have been behind the forgery scheme—presented the forged documents to Speer. Cogburn testified that Speer was under the impression that she was notarizing documents for McKinney, and that Speer did not knowingly participate in any wrongdoing.

Viewing all the evidence in the light most favorable to Southern, *Benton County*, 371 Ark. at 564, 268 S.W.3d at 888–89, a question of material fact exists under the statute. Did Speer recognize McKinney's signature on the documents because she was familiar with it? If so, then Speer violated no duty and Southern is not liable

on the bond. If not, then Speer violated her statutory duty and Southern's bond is available for Freightliner's benefit. If Speer was familiar with McKinney's signature, then contrary to the circuit court's reasoning, the statute imposed no duty of inquiry. The circuit court should not have granted summary judgment in the face of the disputed facts about Speer's familiarity with McKinney's signature and the notarization circumstances.

■ *Damages.* Though we reverse and remand on liability, we address the damage award because the issue may arise on remand. *Rees v. Smith,* 2009 Ark. 169, at 8, 301 S.W.3d 467, 473 (2009). Southern, as Speer's surety, contracted to be "held and firmly bound unto the State of Arkansas in the sum of FOUR THOUSAND DOLLARS" if Speer failed to faithfully discharge her duties. The circuit court, however, held Southern liable for $7,500.00—the current statutory bond minimum—on each of the six forged documents. The multiplication resulted in the $45,000.00 judgment.

■ The circuit court made two legal errors in calculating damages. First, it was error to raise Southern's bond from $4,000.00 to $7,500.00. The bond was given in 1995 under a predecessor statute, which required a $4,000.00 bond. Ark. Code Ann. § 21–14–101 (Supp.1995). The circuit court should not have increased the bond simply because the statute has been amended. Second, the circuit court erred by stacking $7,500.00 for each forged document that Speer notarized. A surety, like a guarantor, is a favorite of the law, and its liability may not be extended beyond the express terms of its agreement. *Cf. Lee v. Vaughn,* 259 Ark. 424, 427, 534 S.W.2d 221, 223 (1976). Southern's potential liability under the bond is $4,000.00. This was the amount of Southern's undertaking and is, therefore, the maximum amount that Freightliner can collect on this bond.

Reversed and remanded.

GRUBER and GLOVER, JJ., agree.