SLIP OPINION



Cite as 2017 Ark. App. 297

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III & IV
**No.** CV-16-885

| | |
|---|---|
| AMERICAN GAMEBIRD RESEARCH EDUCATION AND DEVELOPMENT FOUNDATION, INC.<br>APPELLANT | **Opinion Delivered** May 10, 2017<br><br>APPEAL FROM THE LAFAYETTE COUNTY CIRCUIT COURT<br>[NO. 37CV-15-21] |
| V. | HONORABLE CARLTON D. JONES, JUDGE |
| THOMAS BURTON AND CINDY BURTON<br>APPELLEES | REVERSED AND REMANDED |

**PHILLIP T. WHITEAKER, Judge**

The appellant American Gamebird Research Education and Development Foundation, Inc. (AGRED), appeals the Lafayette County Circuit Court order granting summary judgment to Thomas and Cindy Burton, dismissing AGRED's trespass claims and granting the Burtons' request for a declaratory judgment that they possessed a perpetual, nonexclusive easement to maintain a dock over and across AGRED's property and into Lake Erling. We reverse because the trial court improperly considered documents not authorized under Rule 56 of the Arkansas Rules of Civil Procedure.

I. *Facts and Procedural History*

The facts are undisputed. In 1952, Lake Erling was created through an Act of Exchange. By the Act of Exchange, the United States obtained an easement to acreage owned by International Paper for the purpose of building a flood-control dam and reservoir,

and International Paper was afforded the right to use the water in the reservoir for its industrial purposes.

In 2004, subsidiaries of International Paper granted a Corrected Lake Easement to Lake Erling Properties Limited Liability Corporation, an adjacent landowner, providing access to Lake Erling. Pursuant to the Corrected Lake Easement, Lake Erling Properties LLC's easement rights were to be exercised in compliance with existing policies on land use around Arkansas Game and Fish Commission (AGFC) lakes.

AGRED is the successor in interest to International Paper. The Burtons purchased property from Lake Erling Properties, LLC, subject to the Corrected Lake Easement. Pursuant to the easement, the Burtons built and maintained a 4 foot by 89 foot dock and a 15 foot by 20 foot deck on Lake Erling. To access their dock and deck, the Burtons cross AGRED property.

Starting in May 2014, AGRED began sending notices and invoices to property owners around Lake Erling, including the Burtons, indicating that it would begin selling yearly easements and land-use permits granting the right to traverse over AGRED's property to access Lake Erling and to have and maintain structures thereon, such as docks and boathouses. AGRED specifically notified the Burtons that they could either purchase a land-use permit for their dock from AGRED or provide evidence of a permit from the AGFC. The Burtons did not respond to any of the notices or invoices. AGRED then mailed notice to the Burtons giving them ninety days to either purchase the required land-use permit or remove their dock and deck from Lake Erling. The Burtons again refused to comply.

SLIP OPINION

In May 2015, AGRED filed suit against the Burtons for trespass, seeking removal of their dock and deck and damages for the reasonable value of the Burtons' use of the property until the structures are removed. In its complaint, AGRED contended that the Corrected Lake Easement required compliance with existing policies on land use around AGFC lakes; that, as a result, the Burtons must comply with the policies of the AGFC; and that, because AGFC policies require landowners to obtain a permit for docks and the Burtons had not obtained one from either AGFC or AGRED, they had violated the Corrected Lake Easement and their dock and deck were not legally on AGRED property.

The Burtons answered denying that an AGFC permit was required. They also counterclaimed, seeking a declaratory judgment that they had a nonexclusive easement across the property and that AGRED had no right to impose any additional burden on that easement.

## II. *Summary Judgment*

The Burtons filed a motion for partial summary judgment. The Burtons claimed that, pursuant to the Corrected Lake Easement, they had a nonexclusive perpetual easement to access 100 percent of Lake Erling for the full enjoyment of the lake and to construct docks, piers, boathouses, launch ramps, and other structures and that their rights were not impacted by the easement's reference to AGFC policies. They further argued that the policies of AGFC did not apply to Lake Erling and that AGFC does not require a permit to construct a dock thereon. In support of their motion for summary judgment, the Burtons attached a letter from the AGFC. This letter stated that Lake Erling was not an AGFC lake, that its AGFC policies

regarding permits did not apply, and that the AGFC was not bound by the Corrected Lake Easement. Therefore, the Burtons contended that they were not out of compliance with the restrictions of the easement.

AGRED responded, asserting that the Burtons' easement was not absolute and was subject to the restrictions set forth therein, including the policies of the AGFC. They further responded that because the Burtons failed to comply with those policies by obtaining an AGFC permit, they violated the Corrected Lake Easement, and AGRED was within its rights to order the structures removed. Additionally, AGRED argued that the policies of the AGFC applied regardless of whether the AGFC intended to enforce them. In the alternative, they argued that because AGRED's land-use policies were substantially similar to AGFC's policies, if AGFC's policies were found to be ineffective, the court could alter or modify the agreement to include AGRED's policies to fulfill the intent of the grantors. With regard to the AGFC letter attached to the Burtons' motion, AGRED challenged the admissibility of the letter in its response to summary judgment based on noncompliance with Rule 56.

The trial court granted the Burtons' motion for summary judgment and dismissed AGRED's complaint in its entirety. The trial court also granted judgment in favor of the Burtons on their counterclaim. In so finding, the Court interpreted and construed the language contained in the Corrected Lake Easement. The court found that the policies of the AGFC, including the permitting of docks, did not apply and granted the Burtons an unrestricted easement. AGRED appeals the trial court's granting of the Burtons' motions for summary judgment asserting that the trial court erred in construing the language of the

4

Corrected Lake Easement, in determining that the policies of the AGFC (including the permitting of docks) did not apply, and in granting the Burtons an unrestricted easement.

We need not address the merits of AGRED's argument on summary judgment because the court erred as a procedural matter in granting summary judgment. Summary judgment is governed by Rule 56 of the Arkansas Rules of Civil Procedure. Pursuant to Rule 56(c) and (e), the circuit court may consider affidavits, depositions, admissions, and answers to interrogatories in summary-judgment proceedings. *UMLIC 2 Funding Corp. v. Butcher*, 333 Ark. 442, 970 S.W.2d 211 (1998); *Davis v. Schneider Nat'l, Inc.*, 2013 Ark. App. 737, 431 S.W.3d 321. Where hearsay is offered, and would not be admissible at trial, the hearsay is not considered in the summary-judgment analysis. *See Holt Bonding Co. v. First Fed. Bank of Ark.*, 82 Ark. App. 8, 110 S.W.3d 298 (2003). Stated differently, all evidence submitted in the course of summary-judgment proceedings must be under oath. *See Hadder v. Heritage Hill Manor, Inc.*, 2016 Ark. App. 303, 495 S.W.3d 628; *Davis*, *supra*.

Here, the letter from the AGFC was not under oath, nor was the document in the form of an affidavit. It was therefore not admissible for consideration by the trial court in the summary-judgment proceeding. It is clear from the record that the trial court did consider the letter in making its ruling. First, the trial court entered an order that specifically stated it considered "all exhibits," which would include the inadmissible AGFC letter. Second, in its oral ruling, which was incorporated into the order by reference, the trial court expressly found that the AGFC policies applied only to commission-owned lakes and not commission-used lakes and that the AGFC, to date, had not approved any land-use policy applicable to

5

commission-used lakes. Further, the trial court expressly found that AGFC used Lake Erling at the invitation of International Paper to further the goals and objectives of the Commission. The only way the court could have arrived at these conclusions was by consideration of the AGFC letter. Because the trial court improperly considered documents in granting summary judgment, we must reverse.

Reversed and remanded.

GLADWIN and BROWN, JJ., agree.

HIXSON and MURPHY, JJ., concur.

GRUBER, C.J., and VIRDEN, HARRISON and GLOVER, JJ., dissent.

**KENNETH S. HIXSON, Judge, concurring.** I concur with the majority that the trial court improperly considered documents not authorized by Rule 56 of the Arkansas Rules of Civil Procedure and that the case must be reversed and remanded; however, I would reverse and remand for additional reasons.

In reaching its decision granting appellee's summary judgment and dismissing the appellant's complaint, the trial court reviewed the 1952 Act of Exchange between the United States and International Paper (IP), which created Lake Erling, and the 2004 Corrected Lake Easement between AGRED[1] and Lake Erling Properties, LLC. The Arkansas Game and Fish Commission Land Use Policy (AGFC policy) was attached to the Corrected Lake Easement as an exhibit. It is from the Act of Exchange, the Corrected Lake Easement, and the AGFC policy that the trial court concluded that the intent of the grantor could be clearly found

---

[1]The easement was actually granted by a predecessor of AGRED.

within the four corners of the document itself and that the paragraphs were easily harmonized within the whole of the instrument. I disagree.

The trial court granted partial summary judgment to the Burtons and dismissed AGRED's complaint stating, inter alia, that the Corrected Lake Easement was consistent with the intent expressed in IP's grant of exchange to place "no restriction on the public's use of the lake." However, from a plain reading of the documents, the contents of the Act of Exchange and the Corrected Lake Easement are inconsistent, which creates an ambiguity that cannot be disposed of on summary judgment.

After AGRED filed its complaint for trespass against the Burtons, the Burtons filed a counterclaim for declaratory judgment. Specifically, the Burtons "pray[ed] for a judgment declaring their right to unencumbered access to all the waters of Lake Erling and the land that lies beneath the waters of Lake Erling pursuant to the Corrected Lake Easement attached as Exhibit A to Plaintiff's Complaint." Additionally, the Burtons "pray[ed] for a declaratory judgment that Counter-Defendant cannot impose any burden on Counterclaimants beyond that expressly stated in the Corrected Lake Easement."

The Burtons subsequently filed a motion for partial summary judgment. While the sole issue between the parties appears to be whether AGRED could require the Burtons to purchase a dock permit, from a fair reading of the record, the order of the trial court ostensibly abolished all restrictions and regulations on Lake Erling. In its order granting partial summary judgment, the trial court incorporated by reference its oral findings.

7

To put the trial court's order in context, a review of some of the trial court's pertinent comments and findings reveals the expansive scope of the trial court's order. After the trial court reviewed the Act of Exchange, it quoted paragraph 5(d), which stated, "It is understood and agreed that International Paper Company shall place no restriction upon the public use of the water area of the industrial water supply reservoir located on its lands, either flood control, recreational, wildlife, or fishing and hunting purposes." The trial court then expounded on the issue of no restrictions on the lake area:

> [T]he defendants [Burtons] request the Court to find there to be no genuine issue as to any material fact and that they are entitled to judgment as a matter of law and that the Court enter the declaratory judgment finding Defendants to have a right of access to Lake Erling, including the lake bed and express right to construct a dock and boat house on their adjacent property.
>
> . . . .
>
> In some respects the parties agree that the rights, obligations, and competing interests of the litigants are controlled by the Act of Exchange and the subsequent Corrected Lake Easement.
>
> . . . .
>
> AGRED argues this perpetual and non exclusive [Corrected Lake E]asement is subject to the following language found on page 1056 of the Corrected Lake Easement: Said easement rights shall be exercised in compliance with Subsection (a), the existing

8



policies on land use around the Arkansas Game and Fish Commission lakes, as more

particularly described in Exhibit 1 attached hereto[.]

. . . .

The Court then is called upon to interpret the intent of the grantor in the making of

the conveyance in the Corrected Lake Easement.

After the trial court made these introductory comments, it then added the following:

I find the intent of the grantor to be clearly found within the four corners of the document itself and do not consider extrinsic evidence in this interpretation of the instrument.[1] Although the provisions cited by the litigants in support of their position such as perpetual non exclusive easement versus the language regarding it must be exercised in compliance with [what] appears to create an ambiguity by conflicting paragraphs. The paragraphs are easily harmonized within the whole of the instrument. . . . .

[Pertaining to the AGFC policy, that paragraph reads as follows:] It is specifically understood and agreed that the grantee shall have the full responsibility of obtaining any and all federal, state, or local government permits or licenses for grantee's construction upon or use of the easement property as contemplated hereby. And grantee shall fully comply with all of the laws, rules, regulations, and requirements of any federal, state, or local governmental authority, agency, commission, or other regulatory body[.]

. . . .

It is clear from the language used by the grantor it was IP's intent to provide a governmental agency or body with regulatory authority to enforce its laws, rules, or regulations on the lake and to make the grantee's easement subject to and subservient to state, federal, and local rule making authority. The property being a lake, it would only be logical to cite the Arkansas Game and Fish Commission as an agency with whose rules and regulations one would have to contend. The language places the grantees on notice of such a reality.

---

[1]Whether the trial court improperly reviewed and relied on the extrinsic evidence of the AGFC letter is the subject matter of the majority opinion, which I join.

After reviewing and quoting from several sections of the restrictions set forth in the

AGFC policy, which was attached as exhibit 1 to the Corrected Lake Easement, the trial court

concluded,

> The language of the Corrected Lake Easement as a whole clearly sets forth the intent of the grantor to allow grantee Lake Erling Properties to have a perpetual easement with the right to enter onto the lands and improve it by way of building docks and other structures and improvements that would encourage people to use the lake for recreational activities and build homes on lakefront properties. . . . *The easement granted Lake Erling Properties is consistent with the intent expressed in the original Act of Exchange and that is to place no restriction on the public's use of the lake.* . . . Therefore, this Court finds that there be no remaining issue of genuine material fact and [that] . . . Defendants possess a perpetual, non-exclusive easement as described in the Corrected Lake Easement.

(Emphasis added.)

While the trial court's order is perhaps ambiguous in its scope, the underlying premise

of the order is easily gleaned from the trial court's own words: "The easement granted Lake

Erling Properties is consistent with the intent expressed in the original Act of Exchange and

that is *to place no restriction* on the public's use of the lake." (Emphasis added.) Hence, the

only reasonable interpretation of the trial court's order is that there are no restrictions on the

public's use of the lake including, *in toto*, the AGFC land use policy. Therefore, Lake Erling

has now been declared by the court regulation and restriction free.

That leads to the questions on appeal: whether there are no issues of material fact

regarding the grantor's intent as it relates to restrictions on the lake and whether the grantor's

intent can be determined from the four corners of the document. In my opinion, the answers

are no. The trial court cited language from the Act of Exchange, which provided that the use

of the lake would be unrestricted. However, the trial court also stated, "It is clear from the

language used by the grantor it was IP's intent to provide a governmental agency or body with regulatory authority to enforce its laws, rules, or regulations on the lake." Further, the Corrected Lake Easement provides that the

> grantee shall have the full responsibility of obtaining any and all federal, state, or local government permits or licenses . . . [and that the] grantee shall fully comply with all of the laws, rules, regulations, and requirements of any federal, state, or local governmental authority, agency, commission, or other regulatory body . . . [as they] may relate to [the] protection of the environment, water, air and soil, both surface and subsurface . . . and to make the grantee's easement subject to and subservient to state, federal, and local rule making authority.

Clearly, these commands in the documents are *restrictions* placed on the public's use of the lake and its adjacent land. By going no further, the Act of Exchange and the Corrected Lake Easement provide inconsistent positions on whether the lake is subject to restrictions or regulations. This inconsistency causes the disposition of this case to be unsuitable for summary judgment and requires the case be reversed and remanded to the trial court for a trial on the merits to determine the grantor's intent.

MURPHY, J., joins.

**BART F. VIRDEN, Judge, dissenting.** I respectfully dissent from the majority opinion. American Gamebird Research Education and Development Foundation, Inc.(AGRED) objected to the Arkansas Game and Fish Commission's (AGFC or "Commission") letter on the basis that it was unsworn, unauthenticated, "blatant hearsay," and an ex parte communication by a nonparty. To the extent that the trial court relied on that letter, I agree with the majority that doing so was error.

In a case where the parties agree on the facts—the majority asserts that "[t]he facts are undisputed"—an appellate court simply determines whether the appellee was entitled to judgment as a matter of law. *Washington Cty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, 480 S.W.3d 173. AGRED and the Burtons appear to agree that the "Corrected Lake Easement" controls and that the AGFC's land-use policies were incorporated into the "Corrected Lake Easement." Insofar as the policies relate to construction permits, the plain language indicates that the policies apply to Commission-owned lakes, and Lake Erling is not among the lakes listed in the handbook. The inescapable conclusion is that the Burtons were not required to obtain a permit for their dock and deck from the AGFC, which AGRED appears to concede given its "alternative permitting system."

As to issues of law presented, the appellate court's review is de novo, meaning that the entire case is open for review. *Washington*, *supra*. I acknowledge that the AGFC's letter was not proper evidence to support summary judgment; thus, the letter cannot be considered in our de novo review of whether summary judgment was appropriate. I would affirm because the Burtons were nonetheless entitled to judgment as a matter of law based on the evidence that was *properly* submitted, i.e., the easement and incorporated policies.

It is stated in the majority opinion that "all evidence submitted in the course of summary-judgment proceedings must be under oath. *Hadder v. Heritage Hill Manor, Inc.*, 2016 Ark. App. 303, 495 S.W.3d 628." In fact, in *Davis v. Schneider National, Inc.*, 2013 Ark. App. 737, 431 S.W.3d 321, we held, "All evidence submitted in the course of summary-judgment proceedings must be under oath. Ark. R. Civ. P. 56(e)." While it is an interesting exercise

to trace the evolution and transmogrifications of such a statement through past years and cases, it need not be done here. Suffice it to say, at the very least, our courts have sent mixed messages, and at the most, that is not the law and cannot be found anywhere in the text of Rule 56. Rule 56 also allows for the *pleadings* to be considered by the trial court when deciding a motion for summary judgment. Rule 7 of our Rules of Civil Procedure defines pleadings as "a complaint and an answer; a counterclaim; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third party answer, if a third party complaint is served. No other pleadings shall be allowed." None of the above pleadings are required to be made under oath, nor are they required to contain "admissible evidence." Yet by the very language of Rule 56, they may be properly considered in a summary-judgment proceeding.

The trial court had available to review, and stated that it did review, the pleadings in the case. There were multiple pleadings in the case that included the AGFC policies at issue. In other words, the trial court reviewed much of the same information contained in the letter in other, nonobjectionable pleadings. To be fair, the letter went much further, but the evidence was there that the AGFC regulations applied to Commission-owned lakes, and Lake Erling was not one of them.

Moreover, in reaching its conclusion that the AGFC had no authority to require a landowner to obtain a construction permit, the trial court's primary point in its oral ruling was that the AGFC has no ownership interest in Lake Erling. That fact is established by the

policies themselves. *See, e.g.*, *Chiodini v. Lock*, 2010 Ark. App. 340, 374 S.W.3d 835 (This court saw no reversible error where, over Chiodini's objection, Lock presented live testimony from witnesses to supplement his response to a summary-judgment motion because, even though Rule 56 does not permit such supplementation, the trial court was correct in observing that the testimony revealed little more than what was contained in the witnesses' affidavits attached to Lock's response).

Because this case involves a question of law, which we review de novo, I would affirm. There is nothing for the trial court to do on remand.

Gruber, C.J., and HARRISON and GLOVER, JJ., join.

*Bell & Boyd, PLLC*, by: *Michael W. Boyd* and *Karen Talbot Gean*, for appellants.

*McMath Woods P.A.*, by: *Samuel E. Ledbetter*; and *Joseph Hamilton Kemp, PLLC*, by: *Joseph Hamilton Kemp*, for appellees.