PHILLIP T. WHITEAKER, Judge | tThe appellant American Gamebird Research Education and- Development Foundation, Inc. (AGRED), appeals the Lafayette County Circuit Court order granting summary judgment to Thomas and Cindy Burton, dismissing AGRED’s trespass claims and granting the Burtons’ request for a declaratory judgment that they possessed a> perpetual, -nonexclusive easement to maintain a dock over and across AGRED’s property and into Lake Erling. We reverse because the trial court improperly considered documents not authorized under Rule 56 of the Arkansas Rules of Civil Procedure. . I. Facts .and Procedural History The facts are undisputed. In 1952, Lake Erling was created , through an Act of Exchange. By the Act of Exchange, the, United States obtained an easement to acreage owned by International Paper for the purpose of building a flood-control dam and reservoir, Land International Paper was afforded the right to use the water in the reservoir for its industrial purposes. In 2004, subsidiaries of International Paper granted a Corrected Lake Easement to Lake Erling Properties Limited Liability Corporation, an adjacent landowner, providing access to Lake Erling. Pursuant to the Corrected Lake Easement, Lake Erling Properties LLC’s easement rights were to be exercised in compliance with existing policies on land use around Arkansas Game and Fish Commission (AGFC) lakes. AGRED is the successor in interest‘to International Paper. The Burtons purchased property from Lake Erling Properties, LLC, subject to the Corrected Lake Easement. Pursuant to the easement, the Burtons built and maintained a 4 foot by 89 foot dock and a 15 foot by 20 foot deck on Lake Erling. To access their dock and deck, the Burtons cross AGRED property. Starting in May 2014, AGRED began sending notices and invoices to property owners around Lake Erling, including the Burtons, indicating that it would begin selling yearly easements and land-use permits granting the right to traverse over AGRED’s property to access Lake Erling and to have and maintain structures thereon, such as docks and boathouses. AGRED specifically notified the Burtons that they could either purchase a land-use permit for their dock from AGRED or provide evidence of a permit from the AGFC. The Burtons did not respond to any of the notices or invoices. AGRED then mailed notice to the Burtons giving them ninety days to either purchase the required land-use permit or remove their dock and deck from Lake Erling. The Burtons again refused to comply. lain May 2015, AGRED filed suit against the Burtons for trespass, seeking removal of their dock and deck and damages for the reasonable value of the Burtons’ use of the property until the structures are removed. In its complaint, AGRED contended that the Corrected Lake Easement required compliance with existing policies on land use around AGFC lakes; that, as a result, the Burtons must comply with the policies of the AGFC; and that, because AGFC policies require landowners to obtain a permit for docks and the Burtons had not obtained one from either AGFC or AGRED, they had violated the Corrected Lake Easement and their dock and deck were not legally on AGRED property. The Burtons answered denying that an AGFC permit was required. They also counterclaimed, seeking a declaratory judgment that they had a nonexclusive easement across the, property and that AGRED had no right to impose any additional burden on that easement. II. Summary Judgment The Burtons filed a motion for partial summary judgment. The Burtons claimed that, pursuant to the Corrected Lake Easement, they had a nonexclusive perpetual easement to access 100 percent of Lake Erling for the full enjoyment of the lake and to construct docks, piers, boathouses, launch ramps, and other structures and that their rights were not impacted by the easement’s reference to AGFC policies. They further argued that the policies of AGFC did not apply to Lake Erling and that AGFC does not require a permit to construct a dock thereon. In support of their motion for summary judgment, the Burtons attached a letter from the AGFC. This letter stated that Lake Erling was not an AGFC lake, that its AGFC policies | .¿regarding permits did not apply, and that the AGFC was not bound by the Corrected Lake Easement. Therefore, the Burtons contended that they were not out of compliance with the restrictions of the easement. AGRED responded, asserting that the Burtons’ easement was not absolute and was subject to the restrictions set forth therein, including the policies of the AGFC. They further responded that because the Burtons failed to comply with those policies by obtaining an AGFC permit, they violated the Corrected Lake Easement, and AGRED was within its rights to order the structures removed. Additionally, AGRED argued that the policies of the AGFC applied regardless of whether the AGFC intended to enforce them. In the alternative, they argued that because AGRED’s land-use policies were substantially similar to AGFC’s policies, if AGFC’s policies were found to be ineffective, the court could alter or modify the agreement to include AGRED’s policies to fulfill the intent of the grantors. With regard to the AGFC letter attached to the Burtons’ motion, AGRED challenged the admissibility of the letter in its response to summary judgment based on noncompliance with Rule 56. The trial court granted the Burtons’ motion for summary judgment and dismissed AGRED’s complaint in its entirety. The trial court also granted judgment in favor of the Burtons on their counterclaim. In so finding, the Court interpreted and construed the language contained in the Corrected Lake Easement. The court found that the policies of the AGFC, including the permitting of docks, did not apply and granted the Burtons an unrestricted easement. AGRED appeals the trial court’s granting of the Burtons’ motions for summary judgment asserting that the trial court erred in construing the language of the [ ¡¡Corrected Lake Easement, in determining that the policies of the AGFC (including the permitting of docks) did not apply, and in granting the Burtons an unrestricted easement. We need not address the merits of AGRED’s argument on summary judgment because the court erred as a procedural matter in granting summary judgment. Summary judgment is governed by Rule 56 of the Arkansas Rules of Civil Procedure. Pursuant to Rule 56(c) and (e), the circuit court may consider affidavits, depositions, admissions, and answers to interrogatories in summary-judgment proceedings. UMLIC 2 Funding Corp. v. Butcher, 333 Ark. 442, 970 S.W.2d 211 (1998); Davis v. Schneider Nat’l, Inc., 2013 Ark. App. 737, 431 S.W.3d 321. Where hearsay is offered, and would not be admissible at trial, the hearsay is not considered in the summary-judgment analysis. See Holt Bonding Co. v. First Fed. Bank of Ark., 82 Ark. App. 8, 110 S.W.3d 298 (2003). Stated differently, all evidence submitted in the course of summary-judgment proceedings must be under oath. See Hadder v. Heritage Hill Manor, Inc., 2016 Ark. App. 303, 495 S.W.3d 628; Davis, supra. Here, the letter from the AGFC was not under oath, nor was the document in the form of an affidavit. It was therefore not admissible for consideration by the trial court in the summary-judgment proceeding. It is clear from the record that the trial court did consider the letter in making its ruling. First, the trial court entered an order that specifically stated it considered “all exhibits,” which would include the inadmissible AGFC letter. Second, in its oral ruling, which was incorporated into the order by reference, the trial court expressly found that the AGFC policies applied only to commission-owned lakes and not commission-used lakes and that the AGFC, to date, had not approved any land-use policy applicable to | ^commission-used lakes. Further, the trial court expressly found that AGFC used Lake Erling at the invitation of International Paper to further the goals and objectives of the Commission. The only way the court could have arrived at these conclusions was by consideration of the AGFC letter. Because the trial court improperly considered documents in granting summary judgment, we must reverse. Reversed and remanded. Gladwin and Brown, JJ., agree. Hixson and Murphy, JJ., concur. Gruber, C.J., and Virden, Harrison and Glover, JJ., dissent.