Cite as 2021 Ark. App. 227

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

**No.** CV-20-289

| | |
|---|---|
| CAROLYN JOHNSON, WILLIE MILTON, DIAMOND MILTON, LENNOX MILTON, AND FABIEN BURNETT<br><br>APPELLANTS<br><br>V.<br><br>MISTY SANDERS AND CHARLES LEE SANDERS<br><br>APPELLEES | **Opinion Delivered:** May 5, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION<br>[NO. 60CV-19-1188]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants Carolyn Johnson, Willie Milton, Diamond Milton, Lennox Milton, and Fabien Burnett appeal an order of summary judgment in favor of appellee Misty Sanders. Appellants argue that the circuit court erred in granting summary judgment on their negligent-entrustment claim because a genuine issue of material fact exists. We find no error and affirm.

This appeal stems from an action to recover damages arising out of an automobile accident that occurred on April 13, 2018. Charles Sanders fled the scene on foot but was later identified as the driver by personal items found in the vehicle. Appellants filed suit on February 28, 2019 alleging negligence by Charles and negligent entrustment by Misty as the owner of the vehicle negligently driven by Charles, a drunk driver.[1] On March 22, 2019,

---

[1] Appellants assert that appellee negligently entrusted the vehicle to Charles, despite knowing he had no driver's license and had "many DWIs" over the past two decades.

separate appellee Misty moved for summary judgment claiming she sold the vehicle to Charles on March 16, 2018, prior to the accident. Attached to the summary-judgment motion was a copy of Misty's certificate of title in which the "TITLE ASSIGNMENT BY OWNER AND ODOMETER DISCLOSURE" with the "BILL OF SALE" portion on the back of the title had been filled out and signed by Charles (hereafter referred to as certificate of title). Misty claimed that because the evidence demonstrated she was not the legal owner of the vehicle when the accident occurred, she was entitled to summary judgment.

Appellants filed a response to appellee's motion for summary judgment, stating appellee received "several letters from the City of Little Rock about her ownership of the car in question after the accident on April 13th, 2018." Attached to appellants' response were numerous letters from the City of Little Rock to appellee, notifying her, as the last registered owner, that the vehicle was in the possession of the city's storage facility and detailing the process of reclaiming the vehicle. Relying on the letters, appellants alleged that the "law and facts make it clear that Misty Sanders is the owner of the vehicle in question." Then on August 21, 2019, two days prior to the hearing on the motion for summary judgment, the appellants filed a supplemental response to the appellee's motion for summary judgment and attached several documents, including excerpts from Misty's deposition. Misty filed a motion to strike the supplement as being untimely under Arkansas Rule of Civil Procedure 56(c). Following the August 23, 2019 hearing, the circuit court

granted appellee's motion for summary judgment and dismissed with prejudice. Appellants now timely appeal.

Summary judgment should be granted only when it is clear that there are no genuine sues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law.[2] The purpose of summary judgment is not to try the issues, but to determine if there are any issues to be tried.[3] We no longer refer to summary judgment as a "drastic" remedy and now simply regard it as one of the tools in a circuit court's efficiency arsenal.[4] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[5] On appellate review, we determine if summary judgment was appropriate after deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered.[6] We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[7]

---

[2]*Collins v. Morgan*, 92 Ark. App. 95, 211 S.W.3d 14 (2005).

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

Appellants argue that the circuit court erred in granting summary judgment in favor of Misty on their negligent-entrustment claim. They argue that a genuine issue of material fact remains unanswered regarding ownership of the vehicle driven by Charles on the day of the accident.

Negligent entrustment is established by showing that (1) the entrustee was incompetent, inexperienced, or reckless; (2) the entrustor knew or had reason to know of the trustee's conditions or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant.[8]

Section 308 of the Restatement (Second) of Torts (Am. Law Inst. 1965) provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such a person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Comment *a* to section 308 explains:

*a.* The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in an activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

Restatement (Second) of Torts § 308 cmt. a.

---

[8]*Pace v. Davis*, 2012 Ark. App. 193, 394 S.W.3d 859.

According to the Restatement, one is not liable for negligent entrustment of a thing if he has no right to control its use.[9] Therefore, for Misty to be held liable for negligent entrustment, appellants had to show that Misty had the right to control the use of the vehicle involved in the accident. In *Sanders v. Walden*,[10] the Arkansas Supreme Court stated:

> If the person permitted to operate the car is known to be incompetent and incapable of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the car to an incompetent person is deemed to be the proximate cause of the damage. In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation.

Appellants assert that Misty was the owner of the vehicle involved in the accident giving rise to this action, and as the owner of said vehicle, she negligently entrusted it to Charles. However, before we can reach the merits of appellants' arguments, we must first review the contents of appellants' supplemental response to the motion for summary judgment. The appellants' response to the motion for summary judgment was timely filed and contains documents indicating that the Cobalt was impounded by the City of Little Rock and sold to a third party. The appellants' supplemental response contained documents pertaining to appellee's credibility and prior accidents and conduct of Charles. However, the supplemental response was untimely. Arkansas Rule of Civil Procedure 56(c)(1) provides that the adverse party shall serve a response and supporting materials, if any, within twenty-one days after the motion is served. Rule 56 further states that the moving party may then serve a reply and supporting materials within fourteen days after the response is

[9]*See Mills v. Crone*, 63 Ark. App. 45, 973 S.W.2d 828 (1998).

[10]214 Ark. 523, 527, 217 S.W.2d 357, 360 (1949).

5

served. Appellee filed the summary-judgment motion on March 22, 2019. Appellants timely responded on April 9. Appellee, in turn, replied on April 12, although her time to reply did not expire until April 26. Rule 56(c)(1) explicitly states that "[n]o party shall submit supplemental materials after the time for serving a reply, unless the court orders otherwise." Therefore, in order to be timely, appellants' supplemental materials also had to be served by April 26. However, appellants filed the supplemental response on August 21, 117 days after the time for serving the reply expired. Additionally, appellants did not seek leave from the court for the belated proffers. The record below does not provide any proof that the belated supplemental materials were considered. Consequently, we are precluded from considering them now.

Since the supplemental response is not considered, we are only left with the appellants' response to the motion for summary judgment, which was timely filed to review on appeal. Appellee presented a certificate of title demonstrating that she sold the vehicle, a 2008 Chevy Cobalt, to Charles for a sum of $100 on March 16, 2018, prior to the accident on April 13. In response, appellants submit that appellee's failure to dispute ownership of the vehicle upon receipt of notices from the City of Little Rock regarding liability for storage fees following impoundment after the accident is proof of ownership. Despite appellants' contention, the notices from the city are not proof of ownership, and appellants fail to cite authority to the contrary. The "Demand For Debt and Notice of Intent to Perfect Lien" notice sent by certified mail to appellee states, "As the last registered owner and/or lien holder of the above described vehicle, you are hereby being notified in accordance with Ark. Code Ann. § 27-50-1208 and § 27-50-1209, that the vehicle and all

of its contents has been secured and in the possession of the City of Little Rock Vehicle Storage Facility." Notably, the letter states that it was mailed to the last *registered* owner of the vehicle. But one can own a vehicle without registering it. Once possession, use, and control over a vehicle is transferred to the buyer, the buyer becomes the owner.[11] Registration is not required to convey ownership.

The party defending a motion for summary judgment must respond with facts that would be admissible evidence at trial to create a factual issue.[12] Appellee presented proof, a certificate of title, that she sold the vehicle to Charles prior to the accident. Appellants' response does not meet proof with proof that appellee was the owner when the accident occurred. Therefore, because she was no longer the owner, under Arkansas law, appellee could not be responsible for Charles's use of the vehicle when the accident occurred. We affirm the circuit court's summary judgment order in favor of appellee.

Affirmed.

VIRDEN, GLADWIN, and WHITEAKER, JJ., agree.

HIXSON, J., concurs.

HARRISON, C.J., dissents.

**KENNETH S. HIXSON, Judge, concurring**. I concur with the majority opinion. I write this concurrence to address issues raised by the dissent. The dissent raises two main arguments: (1) the number three (March), handwritten by the appellee on the back of the copy of the certificate of title, *looks like* an eight (August) instead of a three, and therefore,

---

[11]*United States Fid. & Guar. Co. v. Glenn*, 233 Ark. 215, 343 S.W.2d 777 (1961).

[12]*Rankin v. City of Fort Smith*, 337 Ark. 599, 990 S.W.2d 535 (1999).

there is an issue of material fact; and (2) the certificate of title attached to the motion for summary judgment was not a "procedurally competent exhibit" and should not have been considered by the circuit court.

The problem I have with these two positions in the dissenting opinion is that neither issue was raised by the parties below or on appeal. The dissent raises both issues sua sponte. Neither issue is a jurisdictional issue that we are required to raise sua sponte. The dissent instead cites *American Gamebird Research Education & Development Foundation, Inc. v. Burton*, 2017 Ark. App. 297, 521 S.W.3d 176, for the proposition that the certificate of title was not properly before the circuit court. However, in *American Gamebird*, the appellant raised the issue before the circuit court; therefore, it was properly preserved for review, and this court did not raise the issue sua sponte. Our job is not to make arguments for the parties. While both issues may have been interesting (and even dispositive) if made to the circuit court, it is my opinion that neither issue was raised, much less preserved, for appeal. *See Cole v. Laws*, 349 Ark. 177, 184, 76 S.W.3d 878, 882 (2002) (holding that it would not consider arguments that the circuit court erred in granting partial summary judgment that were not made to the circuit court and were made for the first time on appeal).

**BRANDON J. HARRISON, Chief Judge, dissenting**. I respectfully dissent. I would reverse the summary judgment entered in favor of Misty Sanders and remand for further proceedings. The majority's decision to affirm the judgment is based on a misapplication of summary-judgment law to the de novo review process, what it means to view evidence in the light most favorable to the nonmovants (the appellants/plaintiffs), and

how a record is created during the summary-judgment process.  I hope this case gets the attention it deserves.

## I.

In April 2018, plaintiffs Carolyn Johnson, Willie Milton, Diamond Milton, Lennox Milton, and Fabien Burnett were injured when their car was hit head-on by a 2008 blue Chevrolet car that Charles Sanders was driving.  Charles initially fled the scene but was later identified as the driver.  On 28 February 2019, the plaintiffs sued Charles Sanders and his daughter, Misty Sanders.  The plaintiffs alleged that Misty owned the Chevy that Charles was driving when he struck them.  Charles was sued for the obvious reason.  Misty was sued on the theory that she negligently entrusted her car to an unfit driver, her father Charles.

Misty answered the complaint and denied that she owned the car when Charles hit the plaintiffs.  She moved for summary judgment on 22 March 2019.  The only item that she submitted to support her motion was a bill of sale.  The bill is reproduced below, and a red circle has been superimposed on it to highlight a date.  The bill of sale is referenced five times by Misty in her appellee's brief as she argued that no genuine issue of material fact is disputed on whether she transferred ownership of the car to Charles in March 2018, which was before the April wreck.  I will return to the bill's importance soon.

On April 9, the plaintiffs responded to Misty's motion. They attached as exhibit A to their response information from the Arkansas Department of Finance and Administration. The information related to the 2008 Chevy; it showed that Misty Sanders was the record owner on file with the Department. The exhibit also showed that the car had been towed by the police department after the collision. The car was eventually deemed abandoned and sold to a third party during a public auction. Several letters sent by certified mail from the City of Little Rock Department of Fleet Services to Misty (as owner of the Chevy) were included in the plaintiffs' exhibit A, too. The green card has Misty's signature on it and therefore shows that she received the documents.

On April 12, Misty challenged the plaintiffs' response and exhibit. She argued to the circuit court, "Plaintiffs cannot overcome the proof submitted by Misty Sanders that she and her father, Charles Lee Sanders, signed the Title to the vehicle, and, thus, ownership of

10

the same was transferred to her father, on March 16, 2018."[13]  There is one, and only one,

basis for Misty's critical assertion that she transferred the title to, and ownership of, the

Chevy to her father on March 16, 2018.  The one and only source for this *date certain* is the

bill of sale.  Take a moment to read it again; note specifically the handwritten date inside

the superimposed red circle.

Does the bill show a transfer in March or in August?  Is the handwritten date on the

bill, in other words, **3–16–2018** or **8–16–2018**?  March 16, 2018, or August 16, 2018?  Misty

wants it to be a 3 (March).  The majority opinion accepts that Misty wants it to be a three

as well, at least twice.[14]  The majority goes so far as to state that the bill of sale is *the reason*

for affirming the judgment.[15]  The document is front and center because Misty made it so

---

[13]Misty makes the same assertion in her appellee's brief (with my emphasis):

> Here, Appellants failed to overcome the proof submitted by Mrs. Sanders: (1) that Mr. Sanders paid her $100 for the vehicle, and (2) that both signed the Title to the vehicle transferring Title and, thus, ownership and possession of same to Mr. Sanders *on March 16, 2018*.  From that moment forward, Mr. Sanders was the sole owner of the vehicle.

[14]"Attached to the summary-judgment motion was a copy of Misty's Certificate of Title in which the 'TITLE ASSIGNMENT BY OWNER AND ODOMETER DISCLOSURE' with the 'BILL OF SALE' portion on the back of the title had been filled out and signed by Charles (hereafter referred to as Certificate of Title).  Appellee claimed that because the evidence demonstrated she was not the legal owner of the vehicle at the time the accident occurred, she was entitled to summary judgment."  Maj. Op. at 2.

"Appellants assert that appellee was the owner of the vehicle involved in the accident giving rise to this action, and as the owner of said vehicle, she negligently entrusted it to Charles.  . . .  Appellee presented a Certificate of Title demonstrating that she sold the vehicle, a 2008 Chevy Cobalt, to Charles for a sum of $100 *on March 16, 2018*, prior to the accident on April 13."  Maj. Op. at 5-6 (emphasis added).

[15]"Appellee presented a Certificate of Title demonstrating that she sold the vehicle, a 2008 Chevy Cobalt, to Charles for a sum of $100 *on March 16, 2018*, prior to the accident

11

by unequivocally asserting that she washed her hands of ownership of the Chevy "on March 16, 2018," before her father hit the plaintiffs while driving the car in April of 2018. In my view, the circuit court and the majority missed the true import of the bill of sale and the document's role in the case.

Returning to the parties' filings in circuit court, in August, some four months after Misty had challenged the plaintiffs' filing of the supplemental material, the plaintiffs filed more material to support their prior April 9 response. The August material came as three exhibits. Exhibit A was a single page from a May 2019 deposition during which Misty testified that she had never let her father drive the Chevy while she owned it. Exhibit B was a February 2018 police report alleging that Charles had passed out behind the wheel of a blue Chevrolet sedan. (Recall that Misty's car was a 2008 blue Chevy sedan.) Exhibit C was a 29 January 2018 citation issued to Charles Sanders for driving a blue 2008 Chevrolet sedan while his driver's license was suspended.

Misty quickly moved to strike the supplemental material the plaintiffs filed in August for the obvious reason that the material challenges her narrative. The motion to strike states in part:

> Rule 56 of the Arkansas Rules of Civil Procedure is clear: supplemental supporting materials shall not be submitted after the time for serving a reply, "*unless the court orders otherwise.*" *Davis v. Schneider Nat'l, Inc.*, 2013 Ark. App. 737, at 6, 431 S.W.3d 321, 325 (citing *US Fuel Int'l, Inc. v. Murphy Oil USA, Inc.*, 2012 Ark. App. 367, 417 S.W.3d 229; and *Foscue v. McDaniel*, 2008 Ark. 223, 308 S.W.3d 122) (emphasis added). At no time has the Plaintiff requested from the Court, nor has the Court ordered or granted leave, an extension of time permitting Plaintiffs to file a supplement to their

on April 13. . . . Therefore, because she was no longer the owner, under Arkansas law, appellee could not be responsible for Charles's use of the vehicle when the accident occurred." Maj. Op. at 6–7 (emphasis added).

12

Response or to file supplemental materials for this Court's consideration. Plaintiffs' *Supplemental Response* and supporting materials violate Rule 56(c) of the Arkansas Rules of Civil Procedure and should be struck.

(Emphasis in original.) The motion to strike also argued that the supplemental material, minus the deposition excerpt, was inadmissible hearsay and irrelevant.

On August 23, the circuit court held a hearing on the motion for summary judgment. The parties began their arguments; at one point the court said that there was a dispute as to ownership because "[y]ou have a client who says, 'don't own it, transferred it'" and that it was a factual question, not a legal question, as to who owned the vehicle that was involved in the accident. Misty asked the court to determine as a matter of law that she did not own the vehicle because she did not hold the title. Although Misty raised her motion to strike again during the oral argument, the court never ruled on any part of that motion. Not during the hearing and not after it ended. #noruling.

Instead, the court took the case under advisement, and after some months had passed, it issued a written decision. The court granted Misty's motion for summary judgment and dismissed the plaintiffs' claims with prejudice. The entire order states:

> After [a] hearing on the summary judgment motion filed by Misty Sanders, the Court hereby Orders that said motion is granted and all claims of plaintiffs against Misty Sanders should be and hereby are dismissed with prejudice.

This appeal followed.

Now, the plaintiffs below argue here that there is a genuine issue of material fact whether Misty owned the car when her father injured them in April 2018. I agree. Misty, as the movant, did not establish as a matter of undisputed fact that she completely divested herself of ownership and control of the blue Chevy when her father allegedly drove it

13

negligently and injured the plaintiffs. Misty writes, "Noticeably absent from their Brief is any authority or evidence that Misty Sanders was the owner of the vehicle when the subject accident occurred." But as I have said, this statement misses the point of the de novo review when deciding whether a genuine issue of material fact exists on a claim dismissed by a summary judgment. This court does not "see" a document the way a defendant wants it to just because she says it means thus and so or has this or that importance to her narrative.

The plaintiffs have raised a genuine issue of material fact that a jury must determine. Again, Misty's own bill of sale alone puts the ownership/transfer date at issue. She states that there was a March 16 transfer and points to the bill of sale to establish her assertion as fact. But much depends on how one reads the bill's date.

The question of ownership is certainly material. Establishing that Misty owned or controlled a vehicle is an essential element to sustain a claim for negligent entrustment. AMI Civ. 608 (2019). A transfer of ownership is complete when the parties intend to transfer title from seller to buyer and the possession, use, and control of the car is passed on to the buyer. *U.S. Fidelity & Guar. Co. v. Glenn*, 233 Ark. 215, 343 S.W.2d 777 (1961). A usual objective manifestation of one's intent to transfer ownership is the exchange of money with a bill of sale. But a failure to change the title certificate does not, in and of itself, mean that a transfer of ownership has not occurred. *Id.* at 217, 343 S.W.2d at 778. Arkansas Code Annotated section 27–14–911 (Repl. 2014) provides that the owner of a motor vehicle who has made a bona fide sale or transfer of his or her title or interest, and who has delivered possession of the vehicle to the purchaser or transferee, shall not be liable for any damages

14

thereafter resulting from negligent operation of the vehicle by another when one of the following requirements are met:

> (1) Delivered the certificate of title, properly endorsed and dated with the date of the endorsement, to the purchaser or transferee;

> (2) Delivered to the Office of Motor Vehicle or placed in the United States mail, addressed to the office, the notice as provided in § 27-14-916; or

> (3) Delivered to the office or placed in the United States mail, addressed to the office, the appropriate documents and fees for registration of the motor vehicle to the new owner pursuant to the sale or transfer.

The only evidence on when money ($100) may have been exchanged between Misty and Charles is the bill of sale. It is worth noting here that the majority opinion accepts the bill of sale's legitimacy and even notes the consideration as reflected in the bill. But, in something akin to the fallacy of confirmation bias, the majority only recognizes the bill for the purpose Misty would have us use it for. Therein lies an error. As I have said, we do not look at party documents to "see" what one party wants us to. Much less do we mentally redact a key part of a document's content from our de novo review. Instead, we ask whether reasonable minds could differ over the record's entire content, which includes acknowledging all reasonable inferences that may be drawn from the record's entire content, then we view the entire content in the light most favorable to the party that did not ask for the summary judgment. That has not been done here.

A jury question is presented based simply on Misty's assertion that she transferred ownership of the sedan to her father "on March 16, 2008," as she says over and over while pointing solely to the bill of sale. In addition, we have the letters and documents from the city and the department of revenue that (arguably) show Misty as the owner before and after

15

the wreck; and she (apparently) signed the certified-mail receipt acknowledging that she received the department's papers. No evidence in the summary-judgment record shows when or if the bill of sale was delivered either to Charles Sanders or to the motor-vehicle division of the Arkansas Department of Finance and Administration.

Having made a de novo review of the record and having viewed the evidence and all reasonable inferences derived therefrom in the light most favorable to the plaintiffs, there most certainly is a genuine issue of material fact as to whether Misty transferred ownership and relinquished control of her Chevy "on March 16, 2018." Even if we set aside all the other material that the court tussles over today, much depends solely on how you read the bill of sale that Misty herself placed into the record when she moved for summary judgment. If you read the bill of sale as being dated "8-16-2018," as a reasonable person could, then Misty's date certain transfer of ownership of the sedan conflicts with both the bill of sale and her timeline of events.

Which view to ultimately take is not this court's concern. Our sole role is to make a plenary review[16] of the record and decide whether the evidence has created a genuine

---

[16]It is old hat that this court leaves no factual stone unturned when reviewing a summary-judgment record. This court has for years made a plenary review of those records and decided for itself whether a genuine issue of material fact is disputed. *Beaver v. Williams*, 2015 Ark. App. 140, at 3 ("The question here is whether the summary-judgment record, on a plenary review, supports the circuit court's order that no material factual dispute exists as to whether Shipp was unduly influenced to will her estate to caregiver Williams."); *Mountain Pure, LLC v. Affiliated Foods Sw., Inc.*, 96 Ark. App. 346, 350, 241 S.W.3d 774, 776 (2006) ("We begin our plenary review of the record with the written supply contract between Mountain Pure and Affiliated, viewing all evidence and resolving all inferences in Mountain Pure's favor."). Here, the sole issue raised in the circuit court was whether Misty transferred ownership of her Chevy to her father, Charles; and if so, when? The question is nothing more particular than that, nor broader than that, nor more complex.

dispute over a material fact on at least one element of the plaintiffs' claim. It has. Consequently, a jury should be permitted to credit the evidence and the parties' competing narratives as it sees fit to do and then determine the merit of the plaintiffs' complaint under the law. #righttojurytrial.

## II.

We come to the majority's reading of Rule 56(c) and how it applies the rule to this appeal. I would reverse the summary judgment based on the bill of sale alone. But I also respectfully disagree on how the majority has interpreted and applied a rule of civil procedure to exclude material that the plaintiffs submitted in opposition to Misty's motion for summary judgment.

## A.

To begin, why has the majority presumed that Misty's bill of sale was properly before the circuit court in the first place? It should not if we take seriously the reasoning and holding in *American Gamebird Research Education & Development Foundation, Inc. v. Burton*, 2017 Ark. App. 297, 521 S.W.3d 176.

---

I have placed some definitions of "plenary" below to remind us of the scope of such a review and why it matters so much when a party's right to a jury trial has been extinguished by way of a summary judgment. My colleagues and I apparently differ on this facet of the law.

Plenary. 1. Full, complete, or perfect; not deficient in any element or respect; absolute. *OED Online.* March 2021. Oxford University *Press*. https://www.oed.com/view/Entry/145668?redirectedFrom=plenary&p=emailA8fBnqX.xaRCQ&d=145668 (accessed April 29, 2021), archived at https://perma.cc/7HDB-8D25. *See also* Plenary. 1. Full; complete; entire <plenary authority>. Plenary, *Black's Law Dictionary* (11th ed. 2019).

In *American Gamebird*, this court split in a nine-judge case. The majority applied Arkansas Rule of Civil Procedure 56(e) in a way that excluded a piece of evidence from the summary-judgment record that the moving parties (the Burtons) had presented to support their winning motion in the circuit court. Specifically, this court held that a letter the Burtons submitted to support their motion for summary judgment did not comply with the form in which information must be filed with a circuit court to legitimately support a Rule 56 motion. This court cited Rule 56(e) and made that determination for the first time on appeal. By this I mean the circuit court had never expressly addressed the critical issue one way or the other; nor had the Burtons' legal adversary argued as a point in its appeal that the circuit court erred by considering the letter because it was presented in a procedurally defunct form under Rule 56(e). Instead, there was some sort of hearsay objection. But the circuit court did not make an express ruling on that objection either, as far as I can tell. Further, I do not understand the court in *American Gamebird* to have even addressed the appellant's actual argument on appeal. This court went its own way instead; it says as much, as I will point out.

The letter at issue was from the Arkansas Game & Fish Commission. This court held on appeal that the Commission's letter was not sworn testimony or an affidavit; therefore, it was incompetent proof under Rule 56. Here is what we wrote:

> *We need not address the merits of AGRED's argument on summary judgment* because the court *erred as a procedural matter* in granting summary judgment. Summary judgment is governed by Rule 56 of the Arkansas Rules of Civil Procedure. Pursuant to Rule 56(c) and (e), the circuit court may consider affidavits, depositions, admissions, and answers to interrogatories in summary-judgment proceedings. Where hearsay is offered, and would not be admissible at trial, the hearsay is not considered in the summary-judgment analysis.

18

Stated differently, all evidence submitted in the course of summary-judgment proceedings must be under oath.

*Here, the letter from the AGFC was not under oath, nor was the document in the form of an affidavit. It was therefore not admissible for consideration by the trial court in the summary-judgment proceeding.* It is clear from the record that the trial court did consider the letter in making its ruling.

*Id.* at 5, 521 S.W.3d at 178–79 (internal case citations omitted) (emphasis added).

We clearly excluded the Commission's letter although the circuit court had never expressly ruled on the motion to exclude it.[17] One important observation here is that in *American Gamebird*, we expressly stated that the Commission's letter was not an affidavit or other sworn testimony in the same breath as a statement about it being hearsay. In hindsight, this is potentially confusing because even sworn testimony, whether it comes in the form of affidavits or deposition testimony, can still contain hearsay. To oversimplify, the hearsay question depends primarily on who is testifying about what subject and for what reason or to what end. (And it matters whether an exception to the hearsay rule applies, too.) If the hearsay rule properly speaking was the true concern in *American Gamebird*, then we should have addressed the content of the Commission's letter more directly and reasoned through whether any exception to the hearsay rule "saved" the challenged letter, why or why not, and so on. *See, e.g.*, Ark. R. Evid. 803, 804 (reciting various exceptions to the hearsay rule). We did not do that.

---

[17]This fact was a key reason why the appellees in *American Gamebird* petitioned this court for a rehearing and the Arkansas Supreme Court to review this court's decision. Both were denied. *See* case numbers CV-16-885 (court of appeals docket) (petition for rehearing) and CV-17-440 (supreme court docket) (petition for review), both of which can be found using www.arcourts.gov (last visited 26 April 2021).

19

It is clear enough what happened in the *American Gamebird* opinion. This court was primarily concerned with Rule 56 and in what form summary-judgment proof must be presented to circuit courts. We know this because the court told us that a rule of procedure, not a rule of evidence, was the issue. And it put *the forms* in which information is presented to circuit courts as the paramount concern in the case. "We need not address the merits of [appellant's] argument on [why the] summary judgment [should be reversed] because the court erred as a procedural matter in granting summary judgment. . . . Pursuant to Rule 56(c) and (e), the circuit court may consider affidavits, depositions, admissions, and answers to interrogatories in summary-judgment proceedings." *Id*. at 5, 521 S.W.3d at 178 (internal case citations omitted). This court then excluded the Commission's letter because the letter "was not under oath, nor was the document in the form of an affidavit. It was therefore not admissible for consideration by the trial court in the summary-judgment proceeding" and it was "clear from the record that the trial court did consider the letter in making its ruling." *Id*. at 5, 521 S.W.3d at 178–79. Simply put, the Commission's letter was a *procedurally incompetent* submission of proof under Rule 56.

If *American Gamebird*'s reasoning and holding is given full force here, why should we even consider Misty's bill of sale under Rule 56? If we should do so, why? The majority does not say either way. These questions are not trifles.

Misty's bill of sale/certificate of title was the only information that she submitted to support her motion in circuit court; but the document is not any item listed in Rule 56(e), nor is it in a form that *American Gamebird* recognized. The bill's content (like the date it was signed, the amount of consideration paid, who signed it, who were the parties to the

20

transaction) was not recited and attested to by Misty or anyone else in any way, shape, or form that this court deemed mission critical in *American Gamebird*.[18] We never heard from Charles at all. All this seems to mean that Misty never submitted a procedurally competent exhibit in circuit court to establish that she transferred ownership of her Chevy to her father "on March 16, 2018." And if she had no proof in the form that Rule 56 recognizes, then the court's judgment is based on a phantom evidentiary assertion and must be reversed. This seems an indubitable legal truth given *American Gamebird* and its shadow. If not, why not? #precedentmatters.

B.

Even if this court can legitimately sidestep *American Gamebird*'s interpretation of Rule 56(e) ("e" as in egg) in this case, I would still reverse and remand based on the majority's reading of Rule 56(c) ("c" as in cat). The majority's view of the latter section runs counter to my understanding of common practice customs and the plain language of the rule; and it applies the preservation doctrine in a way opposite from how it is usually thought about and

---

[18]Ark. R. Civ. P. 56(e) states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Misty filed no paper in circuit court that meets the criteria set forth in this rule. Consequently, in *American Gamebird*'s wake, she has no support for her pivotal factual assertion that she transferred ownership to her father "on March 16, 2018."

applied by lawyers and courts. The majority also injects speculation into its decision to affirm a summary judgment.

*First*, trial practice and custom do not support my colleagues' view. All I can say here is that my experience and understanding of the summary-judgment process regarding what is "in or out" of the record—and therefore what a circuit court may consider—is essentially opposite the majority's view. The circuit court is, in a very real sense, the final arbiter of the record's content. Misty's counsel agrees with this practice; that is why he filed a motion to strike in the first place. He correctly understood that unless the challenged material was struck from the record by the circuit court, then it remained under consideration. The majority takes the circuit court out of the equation and, I believe, upends practitioners' understanding on how to build a record at the summary-judgment stage as a result.

*Second*, the rule's language resists the majority's view. Here is Rule 56(c) in its entirety:

> (c) Motion and Proceedings Thereon.
>
> (1) The motion shall specify the issue or issues on which summary judgment is sought and may be supported by pleadings, depositions, answers to interrogatories and admissions on file, and affidavits. The adverse party shall serve a response and supporting materials, if any, within 21 days after the motion is served. The moving party may serve a reply and supporting materials within 14 days after the response is served. For good cause shown, the court may by order reduce or enlarge the foregoing time periods. No party shall submit supplemental supporting materials after the time for serving a reply, unless the court orders otherwise. The court, on its own motion or at the request of a party, may hold a hearing on the motion not less than 7 days after the time for serving a reply. For good cause shown, the court may by order reduce the foregoing time period.

(2) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law on the issues specifically set forth in the motion. A partial summary judgment, interlocutory in character, may be rendered on any issue in the case, including liability.

The rule does not state that material filed past a deadline is automatically excluded as a matter of law from the summary-judgment record and the circuit court's consideration. If such a consequential result was intended as a matter of law, then the rule would say so. But it does not say that. What the rule does do, however, is give the circuit court the authority to exclude tardy material from the record if it so chooses. Furthermore, the rule expressly permits the court to expand the response deadline for good cause. Put simply, Rule 56(c) sets deadlines; circuit courts enforce or relax them as they see fit to do in the circumstances while exercising their informed discretion.

*Third*, the majority's view inverts the preservation doctrine and thereby makes preservation an even more vexing and nuanced concern for practitioners and courts. The majority takes issue with the plaintiffs' August filing based on Rule 56, which states, "No party shall submit supplemental supporting materials after the time for serving a reply, unless the court orders otherwise." Ark. R. Civ. P. 56(c)(1). Therefore, the August material cannot be considered as part of the summary-judgment record.

I, of course, agree that the August material was late under the rule. I disagree, however, that the material was automatically excluded from the record as a matter of law and in the absence of a court order. The circuit court never excluded the August supplement that the plaintiffs filed of record. It could have, but it did not. This means the

material was in the record for summary-judgment purposes; and it remained in and under the court's consideration because the court never exercised its option to exclude it under Rule 56.

If the law were as the majority states, then Misty's motion to strike was superfluous. Misty's lead counsel, who has been practicing law for more than four decades, filed that motion because he believed he had to do so. Contrary to the majority's view but in accord with Misty's counsel's actions, Rule 56 and the plaintiffs' tardiness merely provided the circuit court *the opportunity* to strike the challenged material on counsel's motion (or perhaps the court's own motion if it had so expressed). Circuit courts may strike material from a record (or from their consideration) when they have the authority and discretion to do so. Rules themselves do not strike the material *sans* court action. But the circuit court did not rule on the motion to strike in this case. Therefore, the court did not exclude any exhibit for any reason in this case. If there was any doubt about this, then it was Misty's responsibility to obtain a clarification from the court as to what material it considered when deciding her motion for summary judgment.

She did not do so. And it turns out that she did not have to do so because the majority has decided to play circuit court and grant Misty's motion to strike for her at this level. "The record below does not provide any proof that the belated supplemental materials were considered. Consequently, we are precluded from considering it now," the majority writes.

But one can just as easily ask, "Where is the proof that the circuit court *did not* consider the supplement?" The motion to strike was not granted. Why isn't that proof that

24

the court chose *to consider* the supplement?  Avoiding speculation about court rulings—and the inevitable "is so, is not . . ." back and forth that speculation creates—is the raison d'être for the rule that circuit courts must act on motions, one way or the other, before we take any position as an appellate court.  If the circuit court decides to disregard a tardy filing pursuant to Rule 56(c)'s deadlines, then the court must affirmatively order that the identified material be struck from the record (or from its consideration) and provide the reason, which Rule 56(c) provides.  It is, of course, the better practice to ask the circuit court for permission to file summary-judgment-related material out of time before a party files tardy material of record.  But if a party does file before getting permission and essentially wants forgiveness later, the circuit court still must decide how to handle the issue and declare its decision.  Simply put, if the court does not exclude a filing from the record, then it is in.

Whatever one thinks about the majority's interpretation of Rule 56(c), this court has applied its view of the rule to this appeal without the circuit court having ruled on the issue first.  The practical effect is that this court decided Misty's motion to strike for the circuit court; and it sided with Misty.  Judges may, of course, differ on what the rules mean in various contexts.  But we must not start deciding any motion for or against any party for the first time on appeal.  Yet, that is what happened today when the court holds, "The record below does not provide any proof that the belated supplemental materials were considered.  Consequently, we are precluded from considering them now."  And it has happened with the plaintiffs' right to a jury trial on the line.

If the Arkansas Supreme Court wants to change Rule 56 and expressly exclude, as a matter of law, all material that a party files past the stated deadlines in Rule 56(c)—absent a

25

specific court order that enlarges the time and receives the late material—then it can do so. But the supreme court has not taken this position. We should not do so in the meantime; and this is especially so in the absence of a ruling by the circuit court on a party's motion to strike material from that court's consideration.

III.

One would not be foolish to ponder a Master of Laws in Arkansas procedural law before practicing in earnest in any level of court these days. Despite the subject's complexities, nuances, and reticulations, the procedural path forward in this appeal is clear enough. The circuit court's summary-judgment order should be reversed. The transcript of the hearing shows the court was on the right track. For whatever reason, the written order went off track.

As for this court, the majority missteps by stopping short of making the required de novo review of the record. Most prominent is the failure to appreciate how damaging Misty's own bill of sale is to her own argument. In my view, a jury could reasonably determine that the content in the bill of sale directly undermines her timeline of events, a timeline the plaintiffs have put at issue. (I say this presuming, for the sake of argument, that the bill of sale was properly before the circuit court in the first place, although I am not confident of the answer given *American Gamebird*.)

As to the three tardy exhibits that the plaintiffs filed in August—and setting aside any *American Gamebird* complication that, in theory, could adversely affect their submission just as it could Misty's—I make no bones about the fact that the circuit court could have cited Rule 56, the plaintiffs' delay, and then expressly ordered the challenged tardy material be

26

struck from the record for summary-judgment purposes. But the circuit court did not rule on the motion to strike. The importance of this silence cannot be overstated. How many times has this court and our supreme court stated that a party must get an express ruling on a motion before we will consider its effect? Hundreds, if not thousands of times, in one form or another. Misty could have pressed the circuit court for a ruling on her motion to strike, but she did not. Misty could have pressed the court to clarify what it considered as part of the record when it granted summary judgment, but she did not. In the end, all we have from the circuit court is its bottom-line ruling: "After [a] hearing on the summary judgment motion filed by Misty Sanders, the Court hereby Orders that said motion is granted and all claims of plaintiffs against Misty Sanders should be and hereby are dismissed with prejudice."

★ ★ ★

Given the record as it was presented to the circuit court and having applied my understanding of summary-judgment law to it, I would reverse the court's judgment and remand for further proceedings. #respectfullydissent.

*John W. Walker, P.A.*, by: *Lawrence Anthony Walker*, for appellants.

*Matthews, Sanders & Sayes, P.A.*, by: *Mel Sayes* and *James T. Sayes*, for separate appellee Misty Sanders.